UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMARR FOWLER,
    *Plaintiff*,

v.

DEPARTMENT OF CORRECTION *et al.*,
    *Defendants*.

No. 3:17-cv-00848 (JAM)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jamarr Fowler was a prisoner in the custody of the Connecticut Department of Correction (DOC) when he brought this action against some 32 correctional officials and the DOC alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the Constitution, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act. Fowler alleges that defendants denied him reasonable accommodations for his hearing disability, placed him in restrictive housing, denied him access to various prison amenities, and subjected him to harmful conditions of confinement. *See* Doc. #11; *Fowler v. Dep't of Corr.*, 2017 WL 3401252 (D. Conn. 2017). The DOC and the remaining individual defendants have now made an unopposed motion for summary judgment, and for the reasons set forth below, I will grant defendants' motion.

**BACKGROUND**

The following facts are based on the parties' submissions and are viewed in the light most favorable to Fowler as the non-moving party. Fowler became a prisoner of the DOC on November 19, 2015. Doc. #77-4 at 2. Fowler alleges that he has a hearing-related disability. Doc. #1 at 7 (¶ 37). Fowler also alleges the existence of another disability, but is not specific in his complaint. *Ibid.*

On December 16, 2015, the DOC's Utilization Review Committee (URC) examined whether Fowler should receive hearing aids. Doc. #78 at 2. The URC considered Fowler's medical records from New York, *ibid.*, and Fowler refused in January 2016 to undergo another hearing test for the hearing aids. Doc. #79 at 2.

Still, the DOC noted that several accommodations should be implemented to address Fowler's hearing disability, and acknowledged his seizure disorder. Doc. #81 at 2. This included use of a teletype (TTY) phone. *Ibid.* The TTY phone was provided in his cell, and Fowler's counselor at Osborn Correctional Institution has submitted an affidavit noting that Fowler received access equal to that other prisoners received. *Ibid.*; Doc. #82 at 2 (¶ 11).

Osborn officials disciplined Fowler in April of 2016 for misusing the TTY phone and circumventing security measures there. *See* Doc. #77-9. Fowler declined an advocate to aid him in association with the disciplinary charges, and Fowler then became disruptive and was removed from a hearing on the matter. Doc. #77-7 at 2–3; Doc. #77-10 at 3. The investigator recommended a guilty finding. Doc. #77-7 at 5.

Fowler again refused to take a hearing test in June of 2016. Doc. #80 at 2. The clinician evaluating Fowler declined to refer him to an Ear Nose & Throat specialist (ENT) if Fowler was unwilling to take a hearing test. *Ibid.*

Correctional officials issued another report against Fowler—and placed him in administrative restrictive housing—for tampering with the TTY phone at MacDougall-Walker Correctional Institution in February of 2017. *See* Doc. #77-8.

Fowler claims that he was denied adequate accommodations for his disabilities and that defendants were deliberately indifferent to his medical needs. *See* Doc. #11 at 11, 14–15. Fowler never made a formal request for a reasonable accommodation under the DOC's directives. Doc.

#82 at 2 (¶ 9). Similarly, Fowler underwent numerous visits to medical professionals, Doc. #83 at 3, and though he sometimes claimed a seizure disorder, his seizures were being managed with the medication Keppra. *Id.* at 1–2 (¶¶ 7–9). A doctor who treated Fowler submitted an affidavit noting that Fowler did not have severe asthma, was receiving medical treatment within the standard of care, and did not require a single cell or special housing for disabled inmates. *Id.* at 2–4 (¶¶ 10, 14, 16).

On May 8, 2017, Fowler filed an application for a writ of habeas corpus in Connecticut Superior Court. *See* Doc. #101.00 to *Fowler v. Comm'r of Corr.*, TSR-CV-4008808-S (Conn. Super. 2017). Fowler claimed that the disciplinary hearings for the tickets he received deprived him of his due process rights, that he was subjected to inhumane and dangerous prison conditions, that prison officials violated his rights under the ADA and Rehabilitation Act, and that he was placed on an elevated security status in retaliation for filing complaints and grievances against prison staff. *See Fowler v. Comm'r of Corr.*, 2018 WL 2069044, at *1 (Conn. Super. 2018). The Superior Court held a trial on Fowler's claims in October and December of 2017, and issued an order in April 2018 finding that Fowler had failed to establish that his rights had been violated. *Ibid.*

In the meantime, Fowler filed this lawsuit on May 22, 2017. Doc. #1. After my initial review pursuant to 28 U.S.C. § 1915A, I allowed Fowler to proceed on a discrimination claim under the ADA and Rehabilitation Act, Doc. #11 at 10–11; a retaliation claim under the First Amendment, ADA, and Rehabilitation Act against defendants for punishing Fowler for filing grievances and requesting accommodations by falsifying disciplinary reports, placing Fowler in more restrictive housing, denying him access to the phone, and publicizing his medical records, *id.* at 12–13; an Eighth Amendment deliberate indifference claim for denying Fowler access to

disability accommodations, recreation, hygiene in a way that might medically harm him, *id.* at

14–15; a procedural due process claim that he was placed in restrictive housing following

inadequate hearings, *id.* at 16–17; and a class-of-one equal protection claim that defendants

denied him privileges afforded to any inmates, *id.* at 19. Now, however, because of the lack of

evidence to support Fowler's claims, I will grant defendants' unopposed motion for summary

judgment.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well

established. Summary judgment may be granted only if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who

opposes the motion for summary judgment and then decide if those facts would be enough—if

eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing

party. My role at summary judgment is not to judge the credibility of witnesses or to resolve

close contested issues but solely to decide if there are enough facts that remain in dispute to

warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*);

*Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

Although I granted him nearly six months of extensions of time to do so, *see* Docs. #96,

#102 and #109, Fowler has not filed any objection or opposition to defendants' motion for

summary judgment. In *Jackson v. Federal Express*, 766 F.3d 189 (2d Cir. 2014), the Second

Circuit instructed that "when a party, whether *pro se* or counseled, fails to respond to an

opponent's motion for summary judgment, a district court may not enter a default judgment," but

"must examine the movant's statement of undisputed facts and the proffered record support and

4

determine whether the movant is entitled to summary judgment." *Id.* at 197. Here, because Fowler has filed a verified complaint, I will consider his allegations as akin to an affidavit he submitted in opposition to summary judgment. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

### *Discrimination under the ADA and Rehabilitation Act*

Fowler alleges a claim against the DOC under the ADA and § 504 of the Rehabilitation Act on the ground that he was denied reasonable accommodation for his hearing disability through not being placed in special accommodation, not receiving extra time to use the telephone, and that he was kicked out of a hearing after he requested additional hearing aids. Doc. #11 at 10–11.

In order to prevail on a claim under either the ADA or § 504 of the Rehabilitation Act, Fowler "must show that 1) he is a qualified individual with a disability; 2) [the DOC] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the DOC's] services, programs, or activities [or that the DOC] otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). And where a plaintiff's claim turns on the denial of a reasonable accommodation, the plaintiff "must first provide the governmental entity an opportunity to accommodate them through the entity's established procedures used to adjust the neutral policy in question." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003).

Even assuming for the sake of argument that Fowler was a qualified individual with a disability, defendants cast doubt that they were given an opportunity to accommodate him, inasmuch as he refused on multiple occasions to take the hearing test that was necessary in order to qualify for additional hearing aids. *See* Doc. #79; Doc. #80. Similarly, Fowler never filed any

5

official requests for accommodation under the ADA or under the DOC's directives. Doc. #82 at 2 (¶ 9).

Nonetheless, defendants have put forward ample evidence that they did in fact provide Fowler with meaningful accommodations in the face of any hearing disability that he experienced. Defendants acknowledged that Fowler had a hearing disability. *See ibid.* (¶¶ 10–11); Doc. #81 at 2–3; Doc. #83 at 3–4 (¶¶ 14–16). Defendants provided him with a TTY phone throughout his period of incarceration. Doc. #82 at 2 (¶ 11); *see* Doc. #77-5 at 2; Doc. #77-7 at 5; Doc. #77-8 at 14; Doc. #81 at 2. Fowler was given additional time to access the TTY phone relative to the ordinary phone time afforded to prisoners in order to ensure that he would be able to get the same use out of the phone as could inmates without a hearing disability. Doc. #81 at 2. And although Fowler alleges that he should have been placed in a specialized cell, Dr. Breton, who treated Fowler and is not a party to this action, testified that being placed in housing for disabled inmates was unnecessary, and instead noted that being placed with a cellmate would be medically beneficial to Fowler. Doc. #83 at 4–5 (¶ 16).

Finally, while Fowler claims that he was kicked out of a hearing for requesting hearing aids, the evidence shows that Fowler was instead removed from his disciplinary hearing because of his disruptive behavior. Doc. #77-7 at 3; Doc. #77-10 at 3. Fowler has provided no contradictory evidence other than the assertions contained in his complaint, and because I take defendants' unopposed statements of fact in their local rule statement as true, *see* D. Conn. L. Civ. R. 56(a)(1), I conclude that no reasonable jury could find that the DOC denied Fowler a reasonable accommodation, and accordingly grant summary judgment to defendants on Fowler's ADA and Rehabilitation Act discrimination claims.

*Eighth Amendment deliberate indifference to medical needs*

In my initial review order, I allowed Fowler's deliberate indifference claim to proceed on the theory that defendants denied him various treatments and accommodations for his hearing impairment.[1] Doc. #11 at 15. A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). It is well established that a claim for deliberate indifference to serious medical needs has two requirements. "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citations and quotation marks omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).

Here, Fowler alleged that defendants acted with deliberate indifference to his medical needs by denying him disability accommodations, placing him in restrictive housing, denying him access to recreation, showers, and personal hygiene supplies, and placing him in conditions that caused him medical problems and pain. Doc. #11 at 15. Even assuming Fowler's hearing disability constituted a serious medical need, the evidence proffered by defendants shows that Fowler was in fact accommodated with a TTY telephone, Doc. #81 at 2, and Dr. Breton testified that Fowler's care met medical standards. Doc. #83 at 3 (¶ 14). In particular, Dr. Breton

---

[1] I allowed Fowler's Eighth Amendment claim to proceed against defendants Semple, Gallagher, Maurer, Martucci, Maldonado, Wright, Long, Colon, Santiago, Martin, Zegarzewski, Gillette, Conger, Chapeldaine, Roy, Rule, Gonzalez, Leightner, Marga, Griffen, and Lizon in their individual capacities for damages. Doc. #11 at 21.

indicated that Fowler did not have a medical need for any sort of specialized housing or an emergency call button, and would in fact be better-off housed with a roommate as he was. *Id.* at 3–4 (¶ 16). Fowler has not provided any evidence other than his own assertions that his treatment in prison put him at medical risk, and moreover has provided no indication that he made prison officials aware that the care they provided was inadequate. Accordingly, there is no genuine dispute of material fact as to whether defendants exercised deliberate indifference to Fowler's medical needs, and I will grant them summary judgment on Fowler's Eighth Amendment claim.

### *Procedural due process*

Fowler claims that defendants deprived him of his procedural due process rights by repeatedly subjecting him to restrictive conditions with inadequate hearings beforehand.[2] Doc. #11 at 15–17. The standard analysis for a procedural due process claim "proceeds in two steps: [A court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison context, which involves someone whose liberty interests have already been severely restricted because of his confinement in a prison, a prisoner plaintiff must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009) (*per curiam*); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Typically, restrictive confinements of less than 101 days do not implicate a liberty interest. *See Davis*, 576 F.3d at 133.

---

[2] I allowed this claim to proceed against defendants Semple, Santiago, Martin, Nemeth, Dousis, Richardson, Conger, Chapeldaine, Rule, Gonzalez, and Congelos in their individual capacities for damages. Doc. #11 at 21.

8

A plaintiff who shows a deprivation of a liberty interest must then show that he did not receive the process that was constitutionally due. The procedural protections that are due to a prison inmate facing a disciplinary hearing are not as expansive as the due process protections for a criminal defendant standing trial. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1973); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Thus, for example, a prison inmate does not have the right to counsel or to confront witnesses against him. *See Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 567–70). On the other hand, an inmate must be given "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Ibid.* (citing *Wolff*, 418 U.S. at 563–67). Moreover, there must be at least some evidence to support the findings made in the disciplinary hearing. *See Washington v. Gonyea*, 538 F. App'x 23, 25 (2d Cir. 2013). The process due for a prisoner who faces administrative segregation is lower still: simply that prison officials provide the prisoner "some notice of the charges against him and an opportunity to present his views" before he is confined. *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) (quoting *Hewitt v. Helms*, 459 U.S. 460, 474 (1983)).

Defendants' exhibits demonstrate that Fowler received a disciplinary hearing for misuse of the TTY phone in April of 2016. At that hearing, Fowler received notice of the charges against him, could present his case and question witnesses, a third-party hearing officer presided, and Fowler was issued a written statement of the disposition of the hearing and reasons supporting that disposition. *See* Doc. #77-7 at 2, 4; Doc. #77-9 at 2–3, 14–21. Similarly, when prison officials placed Fowler in administrative segregation after they found him tampering with

9

the TTY phone in February of 2017, they told him the reason he was being confined and provided him an opportunity to deny the tampering. Doc. #77-8 at 5–6.

Fowler cannot point to any other evidence to create a genuine dispute as to whether his procedural due process rights were violated. Fowler does allege that, at numerous points during his time in DOC custody, he was housed in relatively restrictive cell blocks and placed in restrictive housing on at least one other occasion from the ones I discussed above. *See* Doc. #1 at 22–23 (¶ 55); *see also, e.g.*, *id.* at 10 (¶ 41). But while Fowler indicates that he was placed in restrictive housing in January of 2017, Doc. #1 at 22–23 (¶ 55), the evidence showing that Fowler had to be escorted from a "Q-Pod" cell to restrictive housing when he was found to be tampering with a TTY phone in February of 2017, *see* Doc. #77-8 at 5, demonstrates that Fowler had by that point left the restrictive housing unit. As such, his time there was well under the 101 days contemplated in *Davis*, and without further evidence, no reasonable jury could find that his January 2017 confinement in restrictive housing deprived him under *Sandin* of a liberty interest.

Similarly, Fowler has not provided any evidence of the respective amounts of time he spent in relatively more restrictive general population units, such as to distinguish them from time he spent in restrictive housing. Accordingly, I conclude that no reasonable jury could find that defendants violated Fowler's procedural due process rights, and so I will grant summary judgment for defendants on Fowler's procedural due process claim.

*Retaliation*

In my initial review, I allowed Fowler to proceed on retaliation claims against individual defendants under the First Amendment, as well as against the DOC under the ADA and Rehabilitation Act.[3] Doc. #11 at 12–13. The standards for each type of claim are not very

---
[3] I allowed this claim to proceed against defendants Maldonado, Colon, Griffen, Richardson, Chapeldaine, Hall, and Leightner in their individual capacities for damages. Doc. #11 at 20.

different. In order to establish a claim for unlawful retaliation against First Amendment speech, a plaintiff must prove that he engaged in speech activity that is protected by the First Amendment and that a governmental defendant took adverse action against the plaintiff because of the plaintiff's protected speech activity. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). A plaintiff must prove that he suffered an adverse action of sufficient magnitude that it would deter a similarly situated person of ordinary firmness from exercising his or her right to speech. *See Burns*, 890 F.3d at 93–94; *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).

Similarly, in order to state a retaliation claim under the ADA or Rehabilitation Act, a plaintiff must establish that "(i) plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks omitted).

Defendants argue that Fowler's allegations of retaliation are unsupported by the evidence, and I agree. Although Fowler accuses some defendants of moving him to more restrictive facilities, and others of falsifying disciplinary reports, denying him TTY phone access, and publicizing medical records, and kicking him out of a disciplinary hearing, *see* Doc. #11 at 12, Fowler's claim that defendants acted adversely to him *because* of his legally protected activity rests only on his own affidavit and the temporal proximity between his filing complaints and grievances and defendants' adverse conduct. *See* Doc. #1; *see also Bennett v. Goord*, 343 F.3d 133 (2d Cir. 2003) (temporal proximity of allegedly retaliatory misbehavior to protected conduct can serve as circumstantial evidence of retaliation). Indeed, some of Fowler's claims are flatly

11

contradicted by defendants' evidence. *See, e.g.*, Doc. #77-7 at 3 (showing that Fowler was excluded from disciplinary hearing for disruptive behavior, rather than making complaints); Doc. *See* Doc. #77-5 at 2; Doc. #77-7 at 5; Doc. #77-8 at 14; Doc. #81 at 2; Doc. #82 at 2 (¶ 11) (showing Fowler's continued access to TTY phone).

But even setting aside defendants' exhibits, because "prisoner retaliation claims are easily fabricated," *Bennett*, 343 F.3d at 137, the Second Circuit has "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (collecting cases); *see Colon*, 58 F.3d at 872–73 (denying summary judgment because prison official admitted retaliatory scheme, but noting that if "circumstantial evidence represented the sum total of [plaintiff's] proof, we might be inclined to affirm the grant of summary judgment."). Because Fowler's retaliation claims rest wholly on his allegations that would at best amount to circumstantial evidence, no reasonable finder of fact could find for Fowler, and therefore I will grant summary judgment for defendants on Fowler's retaliation claims.

### *Equal protection*

Finally, Fowler alleges that defendants violated his rights under the Fourteenth Amendment's Equal Protection Clause by denying him privileges afforded to other hearing-impaired inmates such as additional telephone time and medical call boxes, as well as improperly failing to place him in a housing unit for disabled inmates.[4] Doc. #11 at 19. The Equal Protection Clause protects prisoners from wrongful discrimination. The provision does not mandate identical treatment for each individual; rather it requires that the government treat people in similar situations the same way. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432,

---

[4] I allowed this claim to proceed against defendants Martucci, Maldonado, Wright, Colon, Santiago, Martin, Zegarzewski, Gillette, and Chapeldaine in their individual capacities for damages. Doc. #11 at 21.

439–40 (1985). A violation of the Equal Protection Clause may occur when a governmental classification discriminates between entire classes or groups of people as well as when a classification singles out solely the plaintiff as a "class of one" for disparate treatment. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 29 & n.8 (2d Cir. 2018). To succeed on a class-of-one claim, a plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Although Fowler may have been treated differently from other inmates with a hearing disability, defendants have shown multiple rational bases for doing so. Fowler never made any formal request for accommodations at Osborn. Doc. #82 at 2 (¶ 9). He refused to submit to an evaluation that would qualify him for hearing aids. Doc. #79 at 2. Both medical call boxes and separate housing for disabled inmates were unnecessary for someone with Fowler's impairments. Doc. #83 at 3–4 (¶ 16). Even if Fowler was unable to use the TTY phone as much as the DOC administrative directives prescribe, defendants' evidence showing that Fowler was to be allowed extra time to use the phone indicates that defendants did not intend to deprive Fowler of TTY phone time relative to other inmates. *See* Doc. #81 at 2. Fowler has failed to raise a genuine dispute of material fact as to whether his right to equal protection of the laws was violated, and so I will grant summary judgment for defendants on his claim.

## Conclusion

For the reasons set forth above, I conclude that no reasonable jury could find that defendants violated Fowler's rights under the Constitution, ADA, or Rehabilitation Act. Defendants' motion for summary judgment (Doc. #77) is GRANTED. The motions to schedule

case for trial (Doc. #70) and motion for temporary restraining order and preliminary injunction (Doc. #74) are DENIED as moot in light of this ruling. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 4th day of March 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge